796 N.E.2d 1175 (2003)
342 Ill. App.3d 1041
277 Ill.Dec. 809
In re JANINE M.A., Cheyenne M.A., and Daniel M.A., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Jeanette Anderson, Respondent-Appellant, and Weldon P. Anderson, Respondent.
No. 4-03-0139.
Appellate Court of Illinois, Fourth District.
September 11, 2003.
*1177 Judith N. Lozier (Court-appointed), Mason City, for Jeanette Anderson.
Roger B. Thomson (Court-appointed), Havana, for Weldon P. Anderson.
Alan D. Tucker, State's Attorney, Havana, Norbert J. Goetten, Director, Robert J. Biderman, Deputy Director, Thomas R. Dodegge, of counsel, State's Attorneys Appellate Prosecutor, Springfield, for the People.
Blake Lindner, Boggs, Knuppel & Lindner, Havana, Guardian Ad Litem for Janine M.A.
*1178 Justice KNECHT delivered the opinion of the court:
Respondent, Jeanette Anderson, appeals the February 2003 order of the circuit court of Mason County finding her to be an unfit parent and terminating her parental rights in Janine A., Daniel A., and Cheyenne A. (born February 15, 1991, August 15, 1989, and January 30, 1996, respectively). Respondent raises two arguments in this appeal. She argues (1) the trial court's findings of unfitness were erroneous as a matter of law because the State's petitions to terminate parental rights were not sufficiently specific where they did not comply with a statutory notice requirement to apprise respondent she could "permanently" lose her parental rights (705 ILCS 405/2-13(4) (West 2002)); and (2) the trial court's determinations she was unfit and it was in the children's best interests her parental rights be terminated are against the manifest weight of the evidence. We affirm.

I. BACKGROUND
In August 2000, the State filed a petition for adjudication of wardship for each minor, alleging each was neglected because he or she resided in an injurious environment because there was a long history of domestic violence within the home and their father, Weldon P. Anderson, had twisted Daniel A.'s arm behind his back and threatened to burn the house down with Daniel A. inside if he testified against Weldon in a pending court matter.
In September 2000, respondent stipulated to the allegations in the petition. In November 2000, the trial court conducted a dispositional hearing. The parties agreed to the dispositional order of the trial court. Under the order, the children were found to be neglected and were made wards of the court while continuing to live with respondent. Weldon was not to reside with the family and was only to have supervised visits with the children. Respondent was to comply with Illinois Department of Children and Family Services (DCFS) recommendations and complete any counseling requirements. The children were later removed from respondent's care on March 7, 2001, and placed in foster homes.
In May 2002, the State filed three identical petitions to terminate parental rights, one for each minor. A hearing on the State's petitions was begun on September 11, 2002, and completed on November 18, 2002. At the close of evidence, the trial court found the State had proved by clear and convincing evidence respondent had failed to protect the minor children from conditions within their environment that were injurious to their welfare and had failed to make reasonable progress toward the return of the minor children to their home within nine months of the adjudication of neglect.
Having found respondent unfit, the court held a hearing on the best interests of the children on February 5, 2003. On that date, respondent's parental rights were terminated as to all three children. Respondent filed a notice of appeal on February 14, 2003, and on March 12, 2003, the trial court granted her motion to stay adoption of the children pending this appeal. On May 22, 2003, respondent father, Weldon P. Anderson, was dismissed as a party to the appeal after his attorney failed to file a separate brief.

II. ANALYSIS

A. Alleged Pleading Defect Relating to "Permanent" Termination of Parental Rights
Respondent first contends the trial court's finding of unfitness was erroneous because the State's petition to terminate *1179 her parental rights was defective on its face in that it failed to apprise her her parental rights could be "permanently" terminated. 705 ILCS 405/2-13(4) (West 2002).
Respondent did not raise this issue at trial. Generally, pleading defects must be raised at trial so they may be remedied; otherwise they are forfeited. In re Dragoo, 96 Ill.App.3d 1104, 1107, 52 Ill.Dec. 582, 422 N.E.2d 263, 265 (1981). We choose, however, to address the argument on the merits. The forfeiture rule is a limitation on the parties and not the jurisdiction of the courts. Committee for Educational Rights v. Edgar, 174 Ill.2d 1, 11, 220 Ill.Dec. 166, 672 N.E.2d 1178, 1183 (1996). Further, a reviewing court may consider an issue not raised in the trial court if the issue is one of law and is fully briefed by the parties. Committee for Educational Rights, 174 Ill.2d at 11, 220 Ill. Dec. 166, 672 N.E.2d at 1183.
When the sufficiency of pleadings is challenged, it is an issue of law and is reviewed de novo. U.S. Fire Insurance Co. v. Zurich Insurance Co., 329 Ill.App.3d 987, 1002, 263 Ill.Dec. 528, 768 N.E.2d 288, 299 (2002).
Section 2-13(4) of the Juvenile Court Act of 1987 (Act) provides:
"(4) If termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2-29 is sought, the petition shall so state. If the petition includes this request, the prayer for relief shall clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing.
In addition to the foregoing, the petitioner, by motion, may request the termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2-29 at any time after the entry of a dispositional order under [s]ection 2-22."
705 ILCS 405/2-13(4) (West 2002).
In each of the State's May 2002 petitions to terminate parental rights, the prayer for relief requested that the parental rights of both Weldon and respondent "be terminated" as to each of the three minors, and that the guardianship administrator of DCFS "be authorized and empowered * * * to consent to such adoption of said minor without further notice to or consent by the parents of the minor." The State's May 2002 petitions make no explicit request for "permanent" termination of respondent's parental rights.
Respondent argues the State's failure to comply with the Act's requirement that its petition "clearly and obviously" state respondent could "permanently" lose her rights as a parent renders the pleadings defective. She relies on In re Andrea D., 336 Ill.App.3d 335, 339, 270 Ill.Dec. 719, 783 N.E.2d 681, 684-85 (2003), in which the court found the provision of section 2-13(4) of the Act requiring a petition to terminate parental rights must contain clear and obvious notice to parents they could "permanently" lose their parental rights at the hearing on the petition requires the notice necessarily use the word "permanently." However, the Supreme Court of Illinois recently directed the Second District to vacate its judgment and reconsider. In re Andrea D., 204 Ill.2d 655, 273 Ill.Dec. 403, 789 N.E.2d 303 (2003) (nonprecedential supervisory order directing Second District to vacate its judgment and reconsider). The Second District has now done so and affirmed the termination of the father's parental rights. That decision is consistent with our decision in In re J.R., 342 Ill.App.3d 310, 276 Ill.Dec. 519, *1180 794 N.E.2d 414 (2003), and our decision in this case.
Although the State's May 2002 petitions to terminate respondent's parental rights does not state her parental rights may be "permanently" lost by explicit use of the word "permanently," we hold the State's petition was not defective as a matter of law.
In reviewing the meaning and applicability of the notice requirement found in section 2-13(4) of the Act (705 ILCS 405/2-13(4) (West 2002)), we look not only at subsection (4) itself, but also at the remaining relevant subsections of section 2-13 and of related sections of the Act. Section 2-13 of the Act provides in pertinent part:
"(1) Any adult person, any agency[,] or association by its representative may file, or the court on its own motion, consistent with the health, safety[,] and best interests of the minor may direct the filing through the State's Attorney of a petition in respect of a minor under this Act. The petition and all subsequent court documents shall be entitled `In the interest of ..., a minor'.
(2) The petition shall be verified but the statements may be made upon information and belief. It shall allege that the minor is abused, neglected, or dependent, with citations to the appropriate provisions of this Act * * *.
(3) The petition must allege that it is in the best interests of the minor and of the public that he be adjudged a ward of the court and may pray generally for relief available under this Act. The petition need not specify any proposed disposition following adjudication of wardship.
(4) If termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2-29 is sought, the petition shall so state. If the petition includes this request, the prayer for relief shall clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing.
In addition to the foregoing, the petitioner, by motion, may request the termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2-29 at any time after the entry of a dispositional order under [s]ection 2-22." 705 ILCS 405/2-13 (West 2002).
Section 2-21 of the Act states in part:
"If the court finds that the minor is abused, neglected, or dependent, the court shall then determine and put in writing the factual basis supporting that determination, and specify, to the extent possible, the acts or omissions or both of each parent, guardian, or legal custodian that form the basis of the court's findings.
* * *
(5) The court may terminate the parental rights of a parent at the initial dispositional hearing if all of the following conditions are met:
(i) the original or amended petition contains a request for termination of parental rights and appointment of a guardian with power to consent to adoption[.]"
705 ILCS 405/2-21 (West 2002).
Review of subsection (4) of section 2-13 of the Act in conjunction with the other relevant subsections of section 2-13 as well as section 2-21 leads us to the conclusion that the notice provision of section 2-13(4) does not apply to after-filed petitions to terminate parental rights but only to original petitions for adjudication of abuse or *1181 neglect filed in respect to a minor. The second paragraph of section 2-13(4) and section 2-21(5)(i) of the Act (705 ILCS 405/2-13(4), 2-21(5)(i) (West 2002)) indicate an original petition filed in respect to a minor may or may not contain a request to terminate parental rights. If it does not contain such a request, it "need not specify any proposed disposition following adjudication of wardship" because it may just request a minor be adjudged a ward of the court and may pray generally for relief available under the Act. 705 ILCS 405/2-13(3) (West 2002). However, if an original petition seeks to terminate parental rights, "the prayer for relief shall clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing." 705 ILCS 405/2-13(4) (West 2002).
The State's May 2002 petitions for termination of parental rights filed in this case were supplemental petitions filed over a year and a half after the original petitions for adjudication of wardship. The notice requirement of section 2-13(4) does not apply to them.
Further, the language used in the State's petitions was sufficient to provide notice to respondent that the State sought to permanently terminate her parental rights. Use of the word "permanently" is not necessary to provide adequate notice of the State's intentions. Notice was provided respondent by the State's prayer that respondent's parental rights be "terminated" (commonly defined as "brought to an end") (see Merriam-Webster's Collegiate Dictionary 1212 (10th ed.2000)) and the guardianship administrator of DCFS be authorized to consent to the adoption of the minors without further notice to or the consent of respondent.
Finally, we note respondent in this case was fully admonished of the consequences of the filing of the State's petitions. At the first appearance hearing following the filing of the petitions for termination of parental rights, the trial court admonished respondent as follows:
"If the State were able to prove [these petitions] your parental rights may very well be terminated and these children may be placed for adoption or something else may occur and you would be out of the picture. You would have no further parental rights at any time. Do you understand that?"
Respondent replied that she understood. Fundamental fairness was achieved by the trial court's admonition and respondent's acknowledgment she understood.

B. Trial Court's Order Not Against Manifest Weight of the Evidence
Respondent's other argument is the trial court's determinations that she was unfit and it was in the children's best interests her parental rights be terminated are against the manifest weight of the evidence. The State has the burden of proving a parent's unfitness by clear and convincing evidence. In re C.N., 196 Ill.2d 181, 208, 256 Ill.Dec. 788, 752 N.E.2d 1030, 1045 (2001). Courts of review give great deference to a trial court's finding of unfitness. In re C.M., 305 Ill.App.3d 154, 163, 238 Ill.Dec. 422, 711 N.E.2d 809, 815 (1999). To reverse a trial court's finding on parental unfitness, a reviewing court must find it was against the manifest weight of the evidence. C.N., 196 Ill.2d at 208, 256 Ill.Dec. 788, 752 N.E.2d at 1045. A trial court's findings are against the manifest weight of the evidence where the opposite conclusion is clearly evident. C.N., 196 Ill.2d at 208, 256 Ill.Dec. 788, 752 N.E.2d at 1045.
Section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2002)) sets forth numerous grounds under which a parent *1182 may be considered "unfit." Any one ground properly proved is sufficient to enter a finding of unfitness. In re C.W., 199 Ill.2d 198, 210, 262 Ill.Dec. 802, 766 N.E.2d 1105, 1113 (2002). In this case, the trial court found respondent unfit under two of those grounds, by finding she had:
"(a) Failed to protect the minor children from conditions within her environment that were injurious to their welfare;
[and]
(b) Failed to make reasonable progress towards the return of the minor children to their home within nine months of the adjudication of neglect."
See 750 ILCS 50/1(D)(g), (D)(m)(ii) (West 2002).
Section 1(D)(g) of the Adoption Act (750 ILCS 50/1(D)(g) (West 2002)) was construed by the Illinois Supreme Court in C.W. There, the court stated:
"Under the clear and unambiguous language of section 1(D)(g), a finding of parental unfitness is only warranted where the evidence establishes that the parent failed to protect the child from conditions in the child's environment injurious to the child's welfare. It follows, therefore, that where a child has been removed from an injurious home environment and placed in foster care, a parent cannot be found unfit based on a `failure to protect' during the period the child is in foster care." C.W., 199 Ill.2d at 212, 262 Ill.Dec. 802, 766 N.E.2d at 1114.
The court in C.W. also concluded, however, a parent may be found unfit pursuant to section 1(D)(g) based on evidence of the parent's conduct that gave rise to the original adjudication of neglect. C.W., 199 Ill.2d at 218-19, 262 Ill.Dec. 802, 766 N.E.2d at 1117.
In this case, the children were placed in foster care on March 7, 2001. Therefore, under C.W., evidence of failure to protect after this date may not be considered, but evidence of conduct prior to the filing of the original petitions on August 7, 2000, may be considered.
Respondent stipulated to the allegations of the August 7, 2000, petition. One of those allegations was the children resided in an injurious environment because their father, Weldon, twisted Daniel's arm behind his back and threatened to burn down the house with Daniel inside if Daniel testified against him in a pending court proceedings. The petition also alleged a long history of domestic violence in the home.
Since August 23, 2000, when the family first appeared in court upon the petition for adjudication of wardship, the court entered an order that Weldon no longer live in the home with the minor children and he not have unsupervised visitation with them. Evidence of respondent's actions in regard to her relationship with Weldon after the filing of the original petition and prior to the removal of the children included that respondent had difficulty with issues of codependency and she continued to have contact with her husband, the children were left with unapproved baby-sitters so respondent could spend time with Weldon, and Weldon and one of the children were seen together in an unsupervised setting.
Respondent's failure to protect the children was established by the record. Respondent and Weldon had a long history of domestic violence. This placed respondent on notice Weldon might be violent toward the children. Weldon actually threatened and physically abused Daniel. Respondent maintained a relationship with Weldon after the original petition was filed and allowed one of children to be in Weldon's presence, contrary to a specific order. Evidence supporting a parent's unfitness toward one child may serve as the *1183 basis for termination of parental rights as to all children. In re D.L.W., 226 Ill. App.3d 805, 811, 168 Ill.Dec. 570, 589 N.E.2d 970, 974 (1992). Thus, respondent allowing one child to have unsupervised contact with Weldon proves her failure to protect all three children from harm.
Respondent argues she generally complied with the DCFS service plan. However, reasonable efforts and reasonable progress are not affirmative defenses that can be raised by a parent to refute allegations of neglect under one of the other subsections of section 1(D). In re D.F., 201 Ill.2d 476, 505, 268 Ill.Dec. 7, 777 N.E.2d 930, 946 (2002). Thus, even if respondent did comply with her service plan, it would not be a defense to a failure-to-protect allegation. See C.W., 199 Ill.2d at 219-20, 262 Ill.Dec. 802, 766 N.E.2d at 1118.
Although a finding of unfitness on only one ground found in section 1(D) of the Adoption Act is necessary, we find the trial court's finding of unfitness on the grounds of failure to make reasonable progress was, likewise, not against the manifest weight of the evidence. Under the statutory provision for finding unfitness due to failure to make reasonable progress within nine months of an adjudication of neglect (750 ILCS 50/1(D)(m)(ii) (West 2002)), only evidence within nine months from the date of the adjudication of neglect may be considered by the trial court. In re Brianna B., 334 Ill.App.3d 651, 656, 268 Ill.Dec. 458, 778 N.E.2d 724, 729 (2002). The statutory period begins from the date the trial court files the dispositional order finding the minors neglected. Brianna B., 334 Ill.App.3d at 656, 268 Ill.Dec. 458, 778 N.E.2d at 729. The dispositional orders in this case were filed on November 20, 2000. Therefore, the applicable nine-month period was from November 20, 2000, until August 20, 2001.
Reasonable progress toward return of the child under section 1(D)(m)(ii) of the Adoption Act may be measured by looking at the parent's compliance with the service plans and the court's directives in light of the conditions that gave rise to the removal of the child and in light of other conditions that later became known and would prevent the court from returning custody of the child to the parent. C.N., 196 Ill.2d at 216-17, 256 Ill.Dec. 788, 752 N.E.2d at 1050. The standard for determining whether reasonable progress has been made is an objective one. It may be found when the trial court can conclude the parent's progress is sufficiently demonstrable and of such quality that the child can be returned to the parent in the near future. In re B.W., 309 Ill.App.3d 493, 499, 242 Ill.Dec. 671, 721 N.E.2d 1202, 1207 (1999). Minimally, reasonable progress requires measurable or demonstrable movement toward the goal of reunification. In re K.P., 305 Ill.App.3d 175, 180, 238 Ill.Dec. 375, 711 N.E.2d 478, 482 (1999).
In this case, between November 2000 and August 2001, while respondent attended various counseling sessions and parenting classes, the evidence indicated she did not internalize and demonstrate the lessons she learned there. The children were removed from her care because of her continued relationship with Weldon. The evidence showed respondent did not meet the goals set for her as Weldon continued to dominate her, and her ability to apply what she learned in parenting classes was described as "pretty borderline."
Respondent jumped from job to job, often in tandem with Weldon. If he lost his job, respondent went with him. Respondent was told she would need to put her children above her desires to be with Weldon, but she continued to see him and *1184 place her children with inappropriate baby-sitters. Most of the domestic violence episodes with Weldon occurred when he had been drinking. He participated in inpatient care for his alcohol-abuse problem during the relevant time frame of this case. However, when he had a relapse under outpatient care and failed an alcohol test in respondent's presence, she adopted his excuse the machine was inaccurate and minimized the situation. Although Weldon and respondent were not living together, they maintained constant contact through two-way radios.
Testimony from Veronica Key, respondent's therapist at the time of the hearing on the petition to terminate, was that respondent had begun counseling with her in January 2002, well after the relevant time period for making reasonable progress. However, at that time, respondent had not internalized prior counseling or made any reasonable progress toward correcting her problems. Therefore, if respondent had failed to make reasonable progress by January 2002, she could not have made such progress prior to that, by August 21, 2001. Keys testified respondent was making slow but steady progress in her therapy by September 2002.
Respondent argues she did not fully understand the problems of codependency on undesirable males and the effect on the lives of her children until she began regular and individual therapy. She contends it was not her fault this service was not initiated until after the nine-month period had run. She contends, therefore, her lack of progress during the nine-month period was due to DCFS negligence in failing to provide timely services.
The record indicates, however, respondent was counseled early and often that she must sever her ties and dependency on Weldon in favor of protecting her children. She was offered group domestic-violence counseling during the applicable nine-month period. DCFS had no fault where appropriate services were offered but the necessary messages did not sink into respondent's consciousness until a different form of the same service was offered.
Finally, while respondent raises the issue of the propriety of the trial court's determination that the best interest of the children required her parental rights be terminated, she does not present any argument. The State, in response to respondent's lack of argument, does not address the issue either. We find it has been forfeited.

III. CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment.
Affirmed.
McCULLOUGH, J., concurs.
COOK, J., specially concurs.
Justice COOK, specially concurring:
I agree the language used in the State's petition was sufficient to provide notice to respondent that the State sought to permanently terminate her parental rights. I disagree the notice provision of section 2-13(4), requiring that the prayer for relief "clearly and obviously state that the parents could permanently lose their rights as a parent" (705 ILCS 405/2-13(4) (West 2002)) applies only to original petitions seeking to terminate parental rights, not to after-filed petitions. Such a holding is not required by the language of the Act and serves only to further complicate an area of the law which is already difficult. Even without section 2-13(4), every petition for termination of parental rights should make it clear whether the parents *1185 could permanently lose their parental rights.