NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190701-U

NO. 4-19-0701

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 26, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.P., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County |
| Petitioner-Appellee, | ) | No. 18JA28 |
| v. | ) | |
| Kari P., | ) | Honorable |
| Respondent-Appellant). | ) | John R. Kennedy, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court did not err in finding respondent unfit.

¶ 2    In April 2018, the State filed a petition for adjudication of wardship with respect to L.P., the minor child of respondent, Kari P. The trial court made the minor a ward of the court and placed custody and guardianship with the Department of Children and Family Services (DCFS). In May 2019, the State filed a petition to terminate respondent's parental rights. The court found respondent unfit and determined it was in the minor's best interests to terminate respondent's parental rights.

¶ 3    On appeal, respondent argues only that the trial court erred in finding her unfit. She does not challenge the trial court's best-interests finding. Accordingly, we confine our discussion of the case to the finding of unfitness. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5           A. Proceedings on the Petition for Adjudication of Wardship

¶ 6    In April 2018, the State filed a petition for adjudication of wardship with respect to L.P., born in March 2018, the minor child of respondent and an unknown father. The State alleged L.P. was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2016)) because she was in an injurious environment, as evidenced by (1) respondent's failure to correct the conditions that resulted in a prior adjudication of parental unfitness regarding L.P.'s sibling and (2) the fact that the alleged injurious environment would expose L.P. to respondent's substance abuse. The State's petition indicated respondent was incarcerated at Logan Correctional Center.

¶ 7    From April 3, 2018, to April 5, 2018, the trial court conducted a shelter-care hearing. The trial court found probable cause to believe L.P. was neglected—because of respondent's (1) incarceration, (2) "long history" of substance abuse, and (3) prior adjudication of unfitness with respect to L.P.'s sibling—and placed temporary custody and guardianship with DCFS.

¶ 8    In June 2018, following an adjudicatory hearing, the court entered an order finding L.P. neglected. See *In re L.P.*, 2019 IL App (4th) 180666-U, ¶¶ 8-26 (discussing the evidence presented at the adjudicatory hearing and the trial court's ruling). In September 2018, following a dispositional hearing, the court adjudicated L.P. neglected, made her a ward of the court, and placed custody and guardianship with DCFS. See *id.* ¶¶ 27-34 (discussing the

evidence presented at the dispositional hearing and the trial court's ruling). We affirmed the trial court's judgments. *Id.* ¶ 1.

¶ 9                          B. Proceedings on the Motion to Terminate Parental Rights

¶ 10            In May 2019, the State filed a motion to terminate respondent's parental rights, alleging respondent was unfit because she failed to (1) make reasonable progress toward the minor's return during the nine-month period from August 14, 2018, to May 14, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)), and (2) maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2018)).

¶ 11            On July 19, 2019, and August 9, 2019, the trial court conducted the fitness hearing. Erica Stobaugh worked for Children's Home and Aid as a "Healthy Families home visitor." Stobaugh was the case worker assigned to respondent's case from July 2018 to May 2019, and she indicated respondent was incarcerated throughout the duration of her time on the case. Stobaugh testified respondent's service plan required her to complete substance abuse treatment and parenting classes. When Stobaugh last spoke to respondent, in May 2019, respondent "was on a waiting list for the substance abuse [program], but she was participating in [the prison's] Women of Dignity program, which was four classes, which one of them did include parenting ***."

¶ 12            Meredith Brumfield worked as a case manager for One Hope United. Brumfield was assigned to respondent's case on May 15, 2019, and she indicated respondent had been incarcerated for the entirety of the case. Brumfield testified respondent's service plan required her "to be in a parenting class" and "a substance abuse program." When Brumfield was assigned to respondent's case, respondent had completed no substance abuse or parenting classes.

¶ 13 Respondent, at the time of the hearing, had been incarcerated for 22 months due to a possession-of-a-stolen-vehicle conviction. Originally, her projected release date was in June 2020. However, due to enrollment in one of the prison's educational programs, respondent believed her release date "should be the end of February, beginning of March [2020]." Respondent testified she had participated in several programs offered at the prison. In February 2019, she completed "Life Smart for Women," which "goes over like being healthy, going over health issues for women"; in March 2019, respondent successfully completed "Start Now," a "reentry program" that "revolve[d] around talking about women's issues, your drug abuse, trauma, PTSD"; she was also enrolled in a "Construction Occupations class" until July 2019, when she had to drop the class in order to participate in the prison's drug treatment program because it "was more important." Respondent testified she had been on the drug treatment program's waiting list since she began serving her sentence.

¶ 14 Following presentation of the evidence and recommendations of counsel, the trial court found the State proved respondent unfit for failing to make reasonable progress toward the minor's return during the nine-month period from August 14, 2018 to May 14, 2019. (The court did find respondent had maintained a reasonable degree of interest, concern, or responsibility as to the minor's welfare.) With respect to its finding of unfitness, the trial court reasoned respondent had made no progress toward completion of substance abuse treatment or parenting classes during the relevant time period, as was required by her service plan. Although respondent had been on the waiting list for substance abuse treatment, she did not secure enrollment in the program until after the nine-month period had concluded. As for the parenting classes, the court acknowledged there was evidence respondent had completed a course "that had a session involving parenting education," but ultimately found there was "not evidence of completion of

- 4 -

parenting education, certainly not in any form that would show requisite acquisition of skills to be able to parent this young child."

¶ 15    This appeal followed.

¶ 16                              II. ANALYSIS

¶ 17    Respondent argues the trial court's finding of unfitness was against the manifest weight of the evidence. We disagree.

¶ 18    Section 2-29 of the Juvenile Court Act sets forth a two-step process for the involuntary termination of parental rights. See 705 ILCS 405/2-29(2) (West 2016). "First, the court must find, by 'clear and convincing evidence, that a parent is an unfit person as defined in Section 1 of the Adoption Act.' " *In re J.L.*, 236 Ill. 2d 329, 337, 924 N.E.2d 961, 966 (2010) (quoting 705 ILCS 405/2-29(2) (West 2008)). A finding of unfitness is accorded great deference on appeal—as the trial court has the superior opportunity to observe the demeanor and conduct of the parties and witnesses—and we therefore will not disturb such a finding unless it is against the manifest weight of the evidence, meaning " 'the opposite conclusion is clearly apparent.' " *In re M.I.*, 2016 IL 120232, ¶ 21, 77 N.E.3d 69 (quoting *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 517 (2005)).

¶ 19    In this case, the trial court found, by clear and convincing evidence, respondent was unfit for failing to make reasonable progress toward L.P.'s return during the nine-month period from August 14, 2018, to May 14, 2019. See 750 ILCS 50/1(D)(m)(ii) (West 2018).

¶ 20    "Reasonable progress" is an objective standard that "may be found when the trial court can conclude the parent's progress is sufficiently demonstrable and of such quality that the child can be returned to the parent in the near future." *In re Janine M.A.*, 342 Ill. App. 3d 1041, 1051, 796 N.E.2d 1175, 1183 (2003). "At a minimum, reasonable progress requires measurable

or demonstrable movement toward the goal of reunification." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1067, 859 N.E.2d 123, 137 (2006). The benchmark for measuring whether a parent has made reasonable progress toward the child's return "encompasses the parent's compliance with the service plans and the court's directives ***." *In re C.N.*, 196 Ill. 2d 181, 216, 752 N.E.2d 1030, 1050 (2001).

¶ 21 Here, respondent's service plan required her to complete (1) substance abuse treatment and (2) parenting classes. At the outset of the relevant nine-month period—August 14, 2018—respondent had made no progress toward completion of either objective; by the end of the relevant period—May 14, 2019—nothing had changed.

¶ 22 Erica Stobaugh, respondent's case worker from July 2018 to May 2019, testified that, as of May 2019, respondent "was on a waiting list for the substance abuse [program], but she was participating in [the prison's] Women of Dignity program, which was four classes, which one of them did include parenting ***." Meredith Brumfield, the case worker assigned to respondent's case in May 2019, testified respondent had completed no substance abuse or parenting classes when she was assigned to the case. Further, Brumfield noted in the best-interests report that while some of the courses respondent took in prison "touched on *** parenting," they did "not address the reasons her case came into care." Accordingly, because respondent received no substance abuse treatment and took, at most, a single parenting class during the relevant nine-month period, we conclude the trial court's finding of unfitness was not against the manifest weight of the evidence.

¶ 23 Respondent nonetheless argues she made reasonable progress toward L.P.'s return despite the limited services available to her due to her imprisonment. However, as the trial court found, imprisonment "does not toll the nine-month period ***." *In re J.L.*, 236 Ill. 2d at 341; see

also *In re F.P.*, 2014 IL App (4th) 140360, ¶ 89, 19 N.E.3d 227 ("Time in prison is included in the nine-month period during which reasonable progress must be made."). Although we recognize respondent's incarceration presented additional challenges and we commend her for pursuing the services available to her, the fact remains that she was no closer to reunification on May 14, 2019, than she was on August 14, 2018.

¶ 24                                    III. CONCLUSION

¶ 25            For the reasons stated, we affirm the trial court's judgment.

¶ 26            Affirmed.