NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230455-U

NOS. 4-23-0455, 4-23-0457 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 20, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.B. and D.T., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Stephenson County |
| Petitioner-Appellee, | ) | Nos. 21JA1 |
| v. | ) | 21JA2 |
| Darlene B., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Peter J. McClanathan, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Cavanagh and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, holding the trial court's unfitness finding was not
against the manifest weight of the evidence.

¶ 2     In December 2022, the State filed an amended petition to terminate the parental

rights of respondent, Darlene B., as to her minor children, K.B. (born in August 2012) and D.T.

(born in October 2013). Neither K.B.'s legal father nor the children's biological father are parties

to this appeal. However, K.B.'s legal father separately appealed the termination of his parental

rights in appellate court case No. 4-23-0456. In January 2023, the trial court granted the State's

amended petition and terminated respondent's parental rights. Respondent appeals, arguing the

court's unfitness finding was against the manifest weight of the evidence. We affirm.

¶ 3                          I. BACKGROUND

¶ 4　　　　In January 2021, the State filed petitions seeking to adjudicate K.B. and D.T. neglected under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2020)). The State alleged the minors were neglected because of the uninhabitable living conditions in the residences of both K.B's legal father and their biological parents. In April 2021, the trial court adjudicated both minors neglected due to being in environments injurious to their welfare (705 ILCS 405/2-3(1)(b) (West 2020)). In May 2021, in a separate dispositional order, the court found respondent unfit to care for the minors for reasons other than financial circumstances alone, made the minors wards of the court, and placed their custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 5　　　　Several permanency reviews were held to monitor respondent's progress and case direction.

¶ 6　　　　In December 2022, the State filed an amended petition to terminate respondent's parental rights as to both minors. The State alleged three bases on which respondent was unfit. First, respondent failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors from their home or to make reasonable progress toward their return within nine months after their adjudication as neglected minors, the period in question being from April 2021 to January 2022 (750 ILCS 50/1(D)(m)(i), (ii) (West 2022)). Second, respondent failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors from their home or to make reasonable progress toward their return in the subsequent nine-month period of January 2022 to August 2022 (750 ILCS 50/1(D)(m)(i), (ii) (West 2022)). Third, respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)).

¶ 7     At the December 6, 2022, fitness hearing, the trial court, without objection, took judicial notice of the January 2021 neglect petitions, the April 2021 adjudication order, and permanency review hearing orders from November 2021 and July 2022. The court then heard testimony from one witness, Vanessa Langer, a DCFS case manager.

¶ 8     Langer testified that while she was not the currently assigned caseworker, she had previously been involved with the case for approximately one year. Respondent had substance abuse issues which were not being appropriately addressed in services since the beginning of the case. Respondent underwent a substance abuse assessment in December 2021 and was recommended for intensive outpatient treatment. Respondent had not followed through with that recommendation even though Rosecrance was "for sure *** ready to go for services" in December 2021. (Indeed, there had been an occasion prior to December 2021 where respondent was discharged from services at Rosecrance.) Langer acknowledged respondent completing the recommended parenting classes over a year before. But respondent was still on a waiting list to engage in mental health services through Rosecrance as of the date of the hearing. Langer clarified substance abuse and mental health services were recommended for respondent consistently throughout all the service plans. Langer acknowledged respondent loves her children, but emphasized having her children returned to her is "all based on services and following through, not just love." The State rested and no additional evidence was presented.

¶ 9     During its closing argument, the State asserted respondent had made "no significant progress" in the nearly two years since the commencement of the case. Respondent did not follow through on the recommendation for intensive outpatient services even though her substance abuse had been "the main concern." Instead, respondent had done "the bare minimum

of showing up and getting assessed." Respondent "knows that the issue really is for her substance abuse treatment and she is just not doing it."

¶ 10        Counsel for DCFS argued that "we're really not anywhere further to getting the kids back *** since day one." Respondent had undertaken assessments, which was "probably one of the easiest things you can do." However, respondent had not done the "hard work" of following up with recommended treatment.

¶ 11        Respondent's counsel argued the trial court should find respondent fit or, alternatively, reserve its ruling and set the matter over for a later date to receive additional evidence. Respondent's counsel proposed that "[p]erhaps, [respondent] by then will be in treatment and this case could take a different direction." The guardian *ad litem* argued respondent's "inaction speaks volumes" in terms of her not having even begun treatment and asked, "[h]ow long do we let this case stagnate?"

¶ 12        The trial court found respondent unfit as to the first ground alleged in the State's amended petition. While acknowledging respondent's engagement in some services, the court found:

> "[O]n the significant issues that needed to be addressed to achieve the
> return home goal, namely underlying substance abuse issues and the
> mental health and substance abuse treatment designed to address those
> issues, she made at best a minimal effort in that she would obtain
> evaluations, then fail to follow through on the recommended treatment."

¶ 13        The trial court found the State did not prove the second count of its petition. The court found the January 2022 to August 2022 period "was only an alleged eight-month period, and the statutory requirement is a nine-month period." The court also found the State did not

prove the third count of its petition. According to the court, "the testimony established that the mother, outside of placement disruptions, was consistent in her weekly supervised visits *** and the caseworker testified that [respondent] clearly seemed to love her children, even if she wasn't taking the appropriate steps to achieve the return home goal."

¶ 14    This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16    Respondent argues the trial court's finding her unfit was against the manifest weight of the evidence. Specifically, respondent contends Langer "had no personal firsthand knowledge of what had been ordered or performed more than a year earlier." Respondent maintains the court's unfitness determination "had no evidentiary basis except for what had been detailed in the service plan(s), which were *not* before the court, and Langer's surmise of what they contained."

¶ 17    Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). A parent may be found unfit if she fails to "make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected *** minor." 750 ILCS 50/1(D)(m)(ii) (West 2022). Whether reasonable progress has been made can be determined by assessing "the parent's compliance with the service plans and the court's directives in light of the conditions that gave rise to the removal of the child and in light of other conditions that later became known and would prevent the court from returning custody of the child to the parent." *In re Janine M.A.*, 342 Ill. App. 3d 1041, 1051 (2003). This court has described "reasonable progress" as

"an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the near future, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent will have fully complied with the directives previously given to the parent in order to regain custody of the child." (Emphases omitted.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 18 We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 19 Here, the record shows the trial court's unfitness determination was not against the manifest weight of the evidence. Langer testified substance abuse and mental health services were recommended for respondent consistently throughout all her service plans. After having been discharged from Rosecrance, respondent underwent a substance abuse assessment in December 2021. Respondent was recommended for intensive outpatient treatment. However, respondent did not follow through with this recommended treatment even though Rosecrance

was ready to begin treating her then. Respondent was still on the waiting list for mental health services as of the date of the hearing. In short, respondent had been assessed and recommended for services, but she did not follow up with them. The facts clearly demonstrate respondent had not made progress sufficiently demonstrable for the court to return the minors to her in the near future. See *L.L.S.*, 218 Ill. App. 3d at 461. The facts do not clearly demonstrate the court should have reached the opposite result in finding respondent unfit. Accordingly, the court's determination that respondent was unfit was not against the manifest weight of the evidence.

¶ 20                                    III. CONCLUSION

¶ 21            For the reasons stated, we affirm the trial court's judgment.

¶ 22            Affirmed.