NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241393-U

NO. 4-24-1393

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 26, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* B.L. and B.P., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
|     Petitioner-Appellee, | ) | No. 22JA11 |
|     v. | ) |     22JA12 |
| Samantha M., | ) | |
|     Respondent-Appellant). | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted counsel's motion for leave to withdraw, finding that no nonfrivolous issues could be raised on appeal.

¶ 2    In October 2024, the trial court terminated the parental rights of respondent, Samantha M., as to her minor children, B.L. and B.P. Respondent appealed the court's decision and counsel was appointed to represent her. Counsel subsequently filed a motion to withdraw, along with a supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating there were no viable grounds for appeal. Respondent did not file a response.

¶ 3    We grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 4                      I. BACKGROUND

¶ 5    On March 11, 2022, the State filed a petition for the adjudication of wardship of B.L. (born 2017) and B.P. (born 2010), alleging they were abused and neglected pursuant to the

Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2022)). The petition presented the following factual basis: (1) respondent lived with Cody S., her paramour, and B.L. and B.P., her two children; (2) respondent was previously provided with intact services through Catholic Charities but was not meeting her service goals or participating in substance abuse services; (3) respondent had two prior indicated reports with the Illinois Department of Children and Family Services (DCFS), as well as one pending investigation related to her drug use; and (4) on March 9, 2022, Cody reported that respondent battered him in the family home. Due to respondent's ongoing issues with substance abuse and domestic violence, the petition alleged that the minors' environment was injurious to their health and well-being and it was in their best interests to be made wards of the court. In a court order entered the same day as the petition, the guardianship administrator of DCFS was awarded temporary custody of the minors, with the authorization to place them.

¶ 6        Respondent admitted to the allegations in the State's petition, and on June 23, 2022, the trial court adjudicated the minors abused and neglected. At a later hearing on August 16, 2022, the State expressed to the court its belief that the adjudicatory order from June was void. On the court's questioning, respondent reconfirmed her admission to the allegations in the State's petition, and the State confirmed the existence of a factual basis for the admission. The court entered an amended adjudicatory order, again finding the children abused and neglected based on being in an environment injurious to their welfare.

¶ 7        On the same day as the amended adjudicatory order, the trial court entered a dispositional order finding it consistent with the health, welfare, safety, and best interests of the minors to make them wards of the court. The dispositional order found respondent an unfit parent based on her drug use and incidents of domestic violence. The court also continued

- 2 -

DCFS's custody of the minors. Respondent was admonished that she must cooperate with DCFS and comply with the terms of her service plan or risk termination of her parental rights.

¶ 8          At a permanency hearing on February 1, 2024, the State informed the trial court of its intention to file a motion to terminate respondent's parental rights, as well as the rights of the minors' fathers, neither of whom is a party to this appeal. It asked the court to change the permanency goal for the minors to a goal of substitute care pending termination of parental rights, which the court did. In an order filed the same day, the court found respondent had not made reasonable and substantial progress or efforts toward returning the minors home, specifically noting that respondent was "not engaging in most services, enrolled but not participating, not making real progress towards reunification."

¶ 9          On February 5, 2024, the State filed a motion for termination of parental rights. The State alleged respondent was unfit for (1) failing to make reasonable efforts to correct the conditions which were the basis for the removal of her children (750 ILCS 50/1(D)(m)(i) (West 2022)), (2) failing to make reasonable progress toward the return of her children within any nine-month period following the adjudication of neglect (*id.* § 1(D)(m)(ii)), and (3) failing to make reasonable progress toward the return of her children in any nine-month period after the end of the initial nine-month period following the adjudication of neglect (*id.*). The State designated the relevant nine-month periods as follows: August 16, 2022, to May 16, 2023; and May 16, 2023, to February 16, 2024.

¶ 10          A hearing on the State's motion was held on October 22, 2024. The State's first witness, Kim Tonozzi, testified that she was employed through Chaddock Foster and Adoption Services (Chaddock) and was the supervisor for the minors' case from March 2022 until February 22, 2024. Her duties included supervising caseworkers, reviewing court reports, and

- 3 -

approving service plans. Tonozzi identified and testified to three service plans for respondent dated September 12, 2022; March 16, 2023; and August 23, 2023, which were admitted into evidence. Each plan contained an assessment of respondent's progress for the six months preceding the listed date. Under each of the three service plans, respondent was to complete goals in the following five areas: cooperation, housing and employment, parenting and visitation, substance abuse, and domestic violence. In each plan's assessment, she was rated unsatisfactory with respect to cooperation, housing and employment, parenting and visitation, and substance abuse. Caseworker notes from the plans indicated that she failed to comply with recommendations for services; missed various appointments, drug screenings, and visits with her children; and frequently tested positive for methamphetamine and amphetamines. While respondent was consistently rated unsatisfactory as to housing and employment, caseworker notes on her third plan did indicate she was living with her father and was employed as a housekeeper at a hotel. She was rated satisfactory as to domestic violence on all of her plans, having completed an initial domestic violence assessment and having no further reports of domestic violence incidents.

¶ 11        When asked if Chaddock or DCFS ever recommended that custody be restored to respondent, Tonozzi answered no. She additionally stated that respondent was never recommended to receive extended, overnight, or unsupervised visits with her children. On cross-examination, she acknowledged that respondent was rated satisfactory as to certain subtasks within each goal on each plan, despite overall unsatisfactory ratings.

¶ 12        After Tonozzi's testimony, the court asked opposing counsel if they objected to the admission of the service plans into evidence. Counsel for respondent objected, noting that despite Tonozzi's testimony that each parent had been presented with their respective service

plans, the parents had not signed the documents. The court admitted the plans over counsel's objection, stating that a sufficient foundation was laid for each to be admitted and that the court would decide what weight to give them, as with any exhibit.

¶ 13 The State's next witness, Timothy Lawless, testified that he was the caseworker for respondent's case beginning in March 2024. Lawless identified a service plan dated March 2024, and he stated that respondent had the same goals under this plan as her previous plans. Again, respondent was rated unsatisfactory in the areas of cooperation, housing and employment, parenting and visitation, and substance abuse. She was rated satisfactory as to domestic violence due to her completion of a domestic violence victim program. Caseworker notes on this plan indicated respondent no longer lived with her father and lacked stable housing, continued to test positive for tetrahydrocannabinol without providing receipts to show her purchase of marijuana was legal, and continued to miss weekly drug screenings. Lawless confirmed that at no point during the time period encompassed by this plan was it ever recommended that custody of the children be restored to respondent. Also during this time frame, respondent had no visitations with her children due to the visitations being suspended by court order in November 2022. Lawless testified that respondent did not ask what she could do to have visits reinstated.

¶ 14 Lawless then testified to a service plan dated September 9, 2024. Respondent was again rated unsatisfactory with respect to parenting and visitation, substance abuse, and unemployment and housing. She was rated satisfactory as to cooperation and domestic violence. On cross-examination, Lawless acknowledged that all of respondent's subtasks in the area of substance abuse were rated satisfactory. When asked why her overall rating was then unsatisfactory, Lawless stated, "It must have been a mistake." Both plans were admitted into evidence over opposing counsel's continuing objection based on their lack of signatures. The

State then rested.

¶ 15    The trial court found the State had met its burden of proving by clear and convincing evidence that respondent failed to make reasonable efforts to correct the conditions that brought her children into care and failed to make reasonable progress toward the return of her children within any nine-month period following the adjudication of neglect. The court stated that respondent's efforts never reached the level of progress required by statute, as shown by her repeatedly testing positive for controlled substances despite her involvement in substance abuse services, as well as the fact that the agencies involved never recommended that visits between respondent and her children be reinstated and never recommended that custody or guardianship be returned to respondent.

¶ 16    The trial court then moved to its best-interests determination. The State again called Timothy Lawless to testify. Lawless stated that B.L. and B.P. had lived together with the same foster family since 2023 and appeared to be closely bonded to their foster parents and siblings. He testified that the foster parents had provided the minors with proper education, appropriate discipline, and mental health treatment. Both the minors and the foster parents expressed a desire for the minors to be adopted into their current placements.

¶ 17    The court found it was in the best interests of the minors to terminate respondent's parental rights. The court explained that the minors were in a pre-adoptive placement in which they were safe and provided for and that this placement granted them a "clear opportunity for permanency," a stated goal of the Act. The court also noted that no evidence was presented as to the nature of the relationship, if any, between the minors and respondent and no evidence was presented showing when it would be possible to place the minors back into the custody of any of their natural parents. The court concluded that it could not trade the opportunity for permanence

with the foster parents for an unknown future with respondent.

¶ 18          This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20                              A. Jurisdiction

¶ 21          Before we address the substantive merit of respondent's appeal, we must first address the issue of our jurisdiction. Although not discussed by counsel, our review of the record reveals a potential defect in respondent's notice of appeal. See *People v. Smith*, 228 Ill. 2d 95, 104 (2008) ("A reviewing court has an independent duty to consider issues of jurisdiction, regardless of whether either party has raised them.") Specifically, the notice of appeal lists the names of both minors but lists only B.L.'s case number, 22-JA-11; B.P.'s case number, 22-JA-12, is not included. Without a properly filed notice of appeal, we lack jurisdiction and are obliged to dismiss a case. *Id.* The question, then, is whether the failure to include B.P.'s case number renders the notice of appeal so deficient as to remove our jurisdiction over his case.

¶ 22          We construe notices of appeal liberally. *Smith*, 228 Ill. 2d at 104. "The purpose of a notice of appeal is to inform the prevailing party in the trial court that the other party seeks review of the judgment." *Id.* Accordingly, a notice of appeal is sufficient to confer jurisdiction where it fairly and adequately sets out the judgment complained of and the relief sought. *Id.* "Where the deficiency in notice is one of form, rather than substance, and the appellee is not prejudiced, the failure to comply strictly with the form of notice is not fatal." *Id.* (quoting *Lang v. Consumer's Insurance Service, Inc.*, 222 Ill. App. 3d 226 (1991)).

¶ 23          We find that even without the case number, the notice of appeal here, when liberally construed, is sufficient to confer our jurisdiction over B.P.'s case. Respondent's notice of appeal lists the trial court order being appealed as the termination hearing order from October

- 7 -

22, 2024, which terminated her parental rights in both of her children's cases, not just B.L.'s. Further, despite the omission of B.P.'s case number, the notice of appeal clearly lists the names of both children in the caption. From these two facts, we find respondent's notice of appeal adequately informed the prevailing party, the State, of her intent to appeal the termination of her parental rights as to both of her children, not just B.L. Her failure to include B.P.'s case number was an issue of form rather than substance. We therefore conclude that we have jurisdiction to hear respondent's appeal of the order terminating her parental rights as to her son, B.P.

¶ 24                                B. Substantive Merit

¶ 25        We next turn to the question of whether respondent's appeal presents any potentially meritorious issues. Counsel for respondent contends that even if respondent could feasibly argue that she made reasonable efforts throughout the relevant time period, there is no nonfrivolous issue to be raised regarding her lack of reasonable progress, which would preclude her success on appeal. See *In re Janine M.A.*, 342 Ill. App. 3d 1041, 1049 (2003) ("Any one ground properly proved is sufficient to enter a finding of unfitness."). We agree with counsel.

¶ 26        The Act sets forth a two-step process by which parental rights may be terminated. *In re D.T.*, 212 Ill. 2d 347, 352 (2004). A court must first determine if a parent is unfit under one or more of the grounds listed in the Adoption Act. *Id.*; see 750 ILCS 50/1(D) (West 2022). After a parent is found unfit, the court must then determine if it is in the best interests of the minor that parental rights be terminated. *D.T.*, 212 Ill. 2d at 352. Neither an unfitness determination nor a best-interests determination will be reversed unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶¶ 68, 85. "A trial court's findings are against the manifest weight of the evidence where the opposite conclusion is clearly evident." *Janine M.A.*, 342 Ill. App. 3d at 1049.

¶ 27    Under section 1(D)(m)(ii) of the Adoption Act, a parent may be found unfit for failing "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2022). Whether a parent's progress is reasonable is measured by an objective standard. *Janine M.A.*, 342 Ill. App. 3d at 1051. Reasonable progress exists where a trial court can conclude that the parent's progress is of such a quality that the child can be returned to the parent in the near future. *Id.* The benchmark for measuring progress is the parent's compliance with service plans and court directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the return of the child. *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001). The failure to substantially fulfill the terms of a service plan constitutes a failure to make reasonable progress. *Id.* at 217.

¶ 28    Here, it is clear respondent failed to make reasonable progress toward the return of her children. We consider the State's first designated nine-month period, which spanned from August 16, 2022, to May 16, 2023. In this time, respondent failed to comply with multiple terms of her service plans, receiving unsatisfactory ratings in housing and employment, parenting and visitation, and substance abuse. These ratings were based on numerous long-standing issues that respondent failed to remedy. Notably, she missed drug screenings and, at those she attended, tested positive for controlled substances, despite her alleged participation in substance abuse services and despite the fact that her children were removed, in part, based on her use of controlled substances. Also during this time period, in November 2022, respondent's visits with her children were suspended by court order.

¶ 29    We acknowledge that respondent was consistently rated satisfactory in her goal

related to domestic violence. However, one area of compliance does not create reasonable progress. *In re Interest of M.C.*, 197 Ill. App. 3d 802, 806 (1990) (stating that "*some* progress in *some* areas" does not necessarily constitute reasonable progress when viewing the entirety of the evidence (emphases in original)). Although we acknowledge respondent's completion of domestic violence services, we find her success in this area outweighed by her repeated failure to maintain stable housing, address her issues with substance abuse, and obtain reinstatement of her visits with her children. We are further convinced by the testimony of Chaddock employees that at no point over the duration of respondent's case did they ever recommend that custody be returned to respondent. We therefore conclude that the trial court's finding that respondent failed to make reasonable progress toward the return of her children in any nine-month period following the adjudication of neglect was not against the manifest weight of the evidence. Any argument to the contrary would be frivolous.

¶ 30       We also agree with counsel that no arguably meritorious argument may be raised regarding the trial court's best-interests determination. When determining whether it is in a minor's best interests to terminate parental rights, a court must consider the factors listed in section 1-3(4.05) of the Act. 705 ILCS 405/1-3(4.05) (West 2022). Those factors include:

> "(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;
>
> (b) the development of the child's identity;
>
> (c) the child's background and ties, including familial, cultural, and religious;
>
> (d) the child's sense of attachments, including:

(i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child." *Id.*

While a court must consider all statutory factors, it need not reference each individually in its decision. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19.

¶ 31    Here, the evidence showed that the minors are well-cared for and loved in their current foster placement, where they have each resided since 2023. Both expressed a desire to be adopted by their foster parents, and their foster parents expressed a similar desire to adopt them. On the contrary, no evidence was presented at the best-interests hearing regarding any relationship respondent has with her children. Further, adoption by the minors' foster parents would grant them the permanency envisioned by the Act (see *D.T.*, 212 Ill. 2d at 365), whereas

any future prospect of returning to respondent is uncertain. We therefore conclude that the trial court's best-interests finding was not against the manifest weight of the evidence, and no nonfrivolous arguments may be raised on this issue.

¶ 32                                III. CONCLUSION

¶ 33          For the reasons stated, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 34          Affirmed.