NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200485-U

NOS. 4-20-0485, 4-20-0486, 4-20-0487 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 8, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* B.J., D.J., and C.J., Minors | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Macon County |
| v. | ) | Nos. 18JA239 |
| Ashley J., | ) | 18JA240 |
| Respondent-Appellant). | ) | 18JA241 |
| | ) | |
| | ) | Honorable |
| | ) | Thomas E. Little, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court did not err in finding respondent unfit to parent her minor children or
              in terminating respondent's parental rights.

¶ 2      On July 13, 2020, the trial court found respondent, Ashley J., unfit to parent her

minor children, B.J. (born April 5, 2006), D.J. (born October 22, 2012), and C.J. (born October

12, 2013). On September 10, 2020, the court terminated respondent's parental rights. Respondent

appeals, arguing the trial court erred both in finding that she was an unfit person and in finding

termination of her parental rights was in the best interests of the minors. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4           On October 16, 2018, the State filed petitions for wardship alleging B.J., D.J., and

C.J. were neglected and abused minors under the Juvenile Court Act of 1987 (705 ILCS 405/2-3

(West 2016)) due to unsuccessful intact services designed to address, among other things, respondent's substance abuse issues, unsafe "environmental issues," and "lack of supervision issues." That same day, the trial court conducted a shelter care hearing and entered an order granting temporary custody of the minors to DCFS.

¶ 5 On December 6, 2018, the trial court entered an adjudicatory order finding B.J., D.J., and C.J. were neglected and abused, as alleged by the State. The court also entered a dispositional order finding respondent unfit, unable, and unwilling to parent the minors, making the minors wards of the court, and granting custody and guardianship of the minors to DCFS.

¶ 6 In January 2020, the State filed motions to terminate respondent's parental rights as to all three minors. (We note the State also sought to terminate the parental rights of the minors' fathers and that, ultimately, their parental rights were terminated; however, those individuals are not parties to this appeal and we discuss the facts only as they relate to respondent.) In the motions, the State alleged respondent was an unfit person in that she failed to: maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2018)), make reasonable efforts to correct the conditions that were the basis for the removal of the minors (*id.* § 50/1(D)(m)(i)), and make reasonable progress toward the return of the minors during the nine-month period from December 6, 2018, to September 6, 2019, and the period from April 3, 2019, to January 3, 2020 (*id.* § 50/1(D)(m)(ii)).

¶ 7 On July 13, 2020, the trial court conducted a fitness hearing. At the hearing, the State presented testimony from Lynley Young, the minors' case worker at Webster Cantrell Youth Advocacy (WCYA), an agency operating under contract with DCFS. According to Young, WCYA approved a service plan for respondent in November 2018. Under that plan, respondent was required to, *inter alia*, complete assessments to determine whether she would be required to

participate in any drug treatment, parenting classes, or mental health services to ensure she could properly and safely parent the minors. Young testified that although DCFS had made referrals for respondent to complete the assessments, respondent had failed to do so and, as a result, had been unable to engage in any treatments, classes, or services. Young acknowledged that respondent had been incarcerated starting in "mid-January" 2019 and that she was unable to complete any of the necessary assessments while in jail. Young further acknowledged that, when she visited respondent in jail, respondent would ask about the minors and their well-being. However, Young concluded that respondent had not "put forth any effort to stay in contact with [her]" and had not "completed anything" in her service plan. In its oral pronouncement after both parties presented argument, the court concluded the evidence showed respondent had "essentially done nothing" to complete her service plan, and the court ultimately found respondent to be an unfit person on each ground alleged by the State.

¶ 8        On July 27, 2020, WCYA filed a best interest report. In the report, the agency indicated respondent remained in the Macon County jail and still had not completed any assessments or services. The report further indicated B.J., D.J., and C.J. remained in the foster home where they had been placed after they were removed from respondent's care. According to the report, the minors were generally doing well, although B.J. was experiencing "emotional instability" as a result of "abuse by her mother and paramour." The report recommended that respondent's parental rights be terminated.

¶ 9        On September 10, 2020, the trial court conducted a best interest hearing. At the hearing, the State again called Young to testify. Young began her testimony by noting, two weeks before the best interest hearing, all three children had been removed from their foster home at the request of their foster parent. Since then, the children had been separated from each other: D.J. and

C.J. had been placed in different foster homes and forced to change schools, and B.J. had been admitted to the Lincoln Prairie Behavioral Health Center after being assessed for suicidal intentions. B.J. remained hospitalized as of the date of the best interest hearing due to "mental health issues," which included post-traumatic stress disorder, anxiety, and depression. According to Young, despite the change in their living arrangements, all of the minors were "being provided for" and "taken care of." Young stated D.J. and C.J. were both doing well in school, the home in which one of the minors was living was a "prospective adoptive placement" for that child, she had identified another potential adoptive placement for the other child, and once B.J. was discharged from the hospital, she could be placed with one of her brothers. Young further testified the minors were close to each other and she would "make sure that relationship [was] allowed to continue." Young also stated it would take respondent nine months to one year following her release from incarceration to complete all of the services required in her service plan.

¶ 10    Respondent testified in her own behalf. According to respondent, when she had visits with the minors, they were happy and, before she was incarcerated, she had video calls with the children. Respondent testified she believed WCYA should place the children together with one of her family members instead of in the homes where they were currently placed. Respondent further testified that, once her pending criminal case was over, she was willing to engage with WCYA to complete her services.

¶ 11    Prior to issuing its judgment, the trial court noted this was "an unusual case in that the placement was disrupted within just the last two [weeks]." Ultimately, the court determined, after considering "all the factors set forth in the statute," termination of respondent's parental rights was in the minors' best interests.

¶ 12    This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14          On appeal, respondent argues the trial court erred both in finding that she was an

unfit person and in finding termination of her parental rights was in the best interests of the minors.

¶ 15                                A. Unfitness Finding

¶ 16          In a proceeding to terminate parental rights, the State must first prove, by clear and

convincing evidence, that "the parent is an 'unfit person' as defined in section 1(D) of the Adoption

Act (750 ILCS 50/1(D) (West 2018))." *In re J.H.*, 2020 IL App (4th) 200150, ¶ 67 (citing 705

ILCS 405/2-29(2) (West 2018); *In re M.I.*, 2016 IL 120232, ¶ 20, 77 N.E.3d 69). On review, we

will not reverse the trial court's determination that a parent is an "unfit person" unless it is against

the manifest weight of the evidence. *Id.* ¶ 68. "A court's decision regarding a parent's fitness is

against the manifest weight of the evidence only where the opposite conclusion is clearly

apparent." (Internal quotation marks omitted.) *M.I.*, 2016 IL 120232, ¶ 21.

¶ 17          In the present case, the trial court found respondent was an unfit person based on

several grounds enumerated in section 1(D) of the Adoption Act. However, on review we need

only find the State established a parent's unfitness on a single ground in order to uphold the court's

judgment. See *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006) ("Although

section 1(D) of the Adoption Act sets forth numerous grounds under which a parent may be

deemed 'unfit,' any one ground, properly proven, is sufficient to enter a finding of unfitness.").

Because, for the reasons stated below, we find the State proved respondent's unfitness under

section 50/1(D)(m)(ii), we need not review respondent's unfitness on any other ground.

¶ 18          Section 50/1(D)(m)(ii) of the Adoption Act provides that a parent is considered an

"unfit person" where she fails to "make reasonable progress toward the return of the child to [her]

during any 9-month period following the adjudication of neglect[ ] or abuse[ ] *** under Section

2-3 of the Juvenile Court Act of 1987." 750 ILCS 50/1(D)(m)(ii) (West 2018). "Minimally reasonable progress requires measurable or demonstrable movement toward the goal of reunification." *In re Janine M.A.*, 342 Ill. App. 3d 1041, 1051, 796 N.E.2d 1175, 1183 (2003). Our supreme court has previously determined the benchmark for measuring a parent's reasonable progress under section 1(D)(m) encompasses "the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17, 752 N.E.2d 1030, 1050 (2001). Additionally, we have previously explained "reasonable progress" is:

> "an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991).

¶ 19   Here, the trial court found respondent failed to make reasonable progress toward the return of her children from December 6, 2018, through September 6, 2019. The evidence presented during the fitness hearing demonstrated that, during that period, respondent failed to complete any of the goals identified in the DCFS service plan. Indeed, the evidence showed respondent failed to take even the preliminary step of completing the assessments required to

determine which classes and other services, if any, she would be required to complete before she could be reunited with her children. In summary, as the trial court noted, the evidence presented at the fitness hearing showed respondent had "essentially done nothing" to comply with the directives given for the return of her children. Accordingly, the court's finding that respondent failed to make reasonable progress toward the return of the minors was not against the manifest weight of the evidence.

¶ 20        Nonetheless, respondent argues the trial court's unfitness finding was improper because, beginning in the middle of January 2019, she was incarcerated in the Macon County jail and, because the jail did not provide her the opportunity to complete the required assessments or to otherwise engage in any treatment, classes, or services, she was unable to comply with the DCFS service plan. However, it is by now well-established that "[t]ime in prison is included in the nine-month period during which reasonable progress must be made" and a parent's personal circumstances "prevent[ing] her from making reasonable progress is irrelevant to the objective standard" by which reasonable progress is measured. (Internal quotation marks omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 89, 19 N.E.3d 227. Therefore, respondent's incarceration does not excuse her failure to make any progress toward the return of her children. Moreover, even if respondent's incarceration were relevant to the court's fitness determination, we note, because respondent was not incarcerated until the middle of January 2019, she had more than a month from December 6, 2018, during which she could have made progress toward completing the requirements in her service plan, yet she failed to do so.

¶ 21                          B. Best-Interest Finding

¶ 22        Following a finding of parental unfitness, the trial court conducts a subsequent and separate hearing at which "the State must prove, by a preponderance of the evidence (*In re D.T.*,

212 Ill. 2d 347, 367, 818 N.E.2d 1214, 1228 (2004)), that the proposed termination of parental rights would be in the child's best interests." *J.H.*, 2020 IL App (4th) 200150, ¶ 67 (citing 705 ILCS 405/2-29(2) (West 2018); *M.I.*, 2016 IL 120232, ¶ 20). When making its best-interest determination, the court must consider numerous factors set forth in the Juvenile Court Act. See 705 ILCS 405/1-3(4.05) (West 2018). Those factors, which must be considered in the context of the child's age and developmental needs, include (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks associated with substitute care; and (10) the preferences of the persons available to care for the child. *Id.*

¶ 23 "[A] reviewing court will not reverse a trial court's best-interest determination unless it was against the manifest weight of the evidence." *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53, 74 N.E.3d 1185. As with the court's decision regarding parental fitness, its best-interest determination is only against the manifest weight of the evidence if "the opposite conclusion is clearly the proper result." *In re C.P.*, 2019 IL App (4th) 190420, ¶ 68, 145 N.E.3d 605.

¶ 24 Respondent argues the trial court erred in finding termination of her parental rights was in the best interests of the minors because, two weeks prior to the best interest hearing, the children were removed from the foster home in which they had been living together for the last two years and, since their removal, were no longer living in the same household or attending the same schools. Respondent concludes that "[t]here [was] no guarantee of the permanency for the

children as it stood at the time of the hearing." Respondent is correct that the minors' living arrangement was upended prior to the best interest hearing. However, it does not follow that, because of that change, termination of respondent's parental rights was not in the best interests of the minors. The evidence presented at the best-interest hearing showed that, despite the recent change in their placements, Young had already ensured the minors were being "taken care of" and was working to provide them permanence. By the time of the best interest hearing, C.J. and D.J. had been moved into new, albeit separate, placements and were both doing well in school. Either C.J. or D.J. had been placed in a home in which the family was willing to adopt him and Young had already identified another adoptive placement for the other sibling. Although B.J. was still hospitalized, Young anticipated that she would be placed with one of her brothers after her release, and Young testified she intended to make sure the siblings' relationship with each other continued even if they were not ultimately placed together. Moreover, contrary to respondent's assertion, there was no evidence presented that the children's interests in permanence would have been better served if her parental rights were not terminated. At the time of the best-interest hearing, respondent was still incarcerated and facing criminal charges. Even if those charges were dismissed or respondent was acquitted in the near future, Young testified it would take another 9-12 months before she could complete all of the services required for the children to be returned to her. Because, by the time of the best-interest hearing, almost two years had passed since the children were first taken into care, it cannot be said that the minors' interests in permanence would be better served by remaining in foster care while they waited for respondent to finally complete the services necessary for reunification. Therefore, the trial court's finding that the minors' best interests, including their interests in permanence, would be best served by terminating respondent's parental rights was not against the manifest weight of the evidence.

## III. CONCLUSION

¶ 26      For the reasons stated, we affirm the trial court's judgment.

¶ 27      Affirmed.